# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIMI ROSE, | : |
| | : Civil No. 1:13-CV-2056 |
| **Plaintiff** | : |
| | : (Judge Jones) |
| v. | : |
| | : (Magistrate Judge Carlson) |
| YORK COUNTY, et al., | : |
| | : |
| **Defendants** | : |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This case, which comes before the Court for a screening review of the plaintiff's amended complaint, is a *pro se, in forma pauperis* action brought by Jimi Rose against 22 state court judges, and two counties. (Doc. 1) In his initial *pro se* complaint, Rose protested a host of rulings made by these state judges over the span of ten years in child custody and domestic relations cases. Attributing his repeated failures in this state-court litigation to a perceived pattern of racism, Rose sued the judges, and counties, seeking $2,000,000 in damages and an injunction enjoining all of these judges from ever hearing Rose's cases in the future. (Doc. 1)

We initially recommended that this complaint, and the motions to re-open his state court judgments, and transfer venue over these cases (Doc. 3); to reinstate the plaintiff's parental rights (Doc. 4); and to vacate various state court orders (Doc. 5),

and be dismissed and denied. (Doc. 9.) On August 13, 2013, the district court adopted this Report and Recommendation, (Doc. 12), but permitted Rose leave to file an amended complaint in order to allow Rose to try to correct the flawed in his initial pleadings.

Rose has now filed a motion for leave to file an amended complaint, along with a proposed amended complaint. (Doc. 13) While this amended complaint argues with great passion Rose's subjective beliefs regarding the unfairness of various state court rulings, and insists that these subjective beliefs entitle Rose to sue state judges, enjoin state court proceedings, and re-litigate state domestic relations rulings in federal court, regrettably nothing in Rose's amended complaint addresses the fundamental deficiencies previously cited to the plaintiff by this Court. Therefore, this amended complaint, like Rose's original complaint, is a legally flawed document which should be dismissed.

**II. Discussion**

**A. Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review**

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails

to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, for the reasons set forth below, Rose's amended complaint is fatally flawed and should be dismissed.

> **B.  The Rooker-Feldman Doctrine Prevents Rose from Re-litigating these Claims Which He Lost in State Court**

At the outset, the Rooker-Feldman doctrine continues to apply here and bars further consideration of this matter, which arises out of various state domestic relations cases. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Rose, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has

Judged against these legal benchmarks, for the reasons set forth below, Rose's amended complaint is fatally flawed and should be dismissed.

> **B.  The Rooker-Feldman Doctrine Prevents Rose from Re-litigating these Claims Which He Lost in State Court**

At the outset, the Rooker-Feldman doctrine continues to apply here and bars further consideration of this matter, which arises out of various state domestic relations cases. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Rose, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has

inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts

-8-

have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the Rooker-Feldman doctrine in the particular field, Rose's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed. Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007).

### C. This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case

Further, we note that the plaintiff also continues to request an injunction enjoining the state courts from proceeding forward in this state case. (Doc. 13) To the extent that Rose's complaint invites this Court to enjoin pending state cases, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state child custody and domestic relations cases. See, e.g., Wattie-Bey v. Attorney Gen.'s Office, 424 F. App'x 95, 96 (3d Cir. 2011)(Younger abstention in ongoing state court custody proceedings); Lazaridis v.

Wehmer, 591 F.3d 666, 667 (3d Cir. 2010)(same); Anthony v. Council, 316 F.3d 412, 423 (3d Cir. 2003)( Younger abstention in child support hearings).

In this case, the plaintiff's amended *pro se* complaint still reveals that all of the legal prerequisites for Younger abstention are present here. First, it is evident that there were state proceedings in this case. Second, it is also apparent that those proceedings afford Rose a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since these matters involve child custody and domestic relations matters, an issue of paramount importance to the state. See, e.g., Lazaridis v. Wehmer, 591 F.3d 666, 667 (3d Cir. 2010)(same); Anthony v. Council, 316 F.3d 412, 423 (3d Cir. 2003) (Younger abstention in child support hearings).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). However, given the important state interest in enforcement of its child custody laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.

### 3. The Judges Named in This Lawsuit Are Entitled to Immunity

Furthermore, in his amended complaint Rose persists in suing 22 state judges and the two counties in which these judges preside over cases. Rose's claims against these defendants continue to fail for two at least reasons. First, to the extent that the plaintiff seeks in his amended complaint to hold these judicial officers, and the counties where they preside, personally liable for civil rights violations, it is well-settled that these judges are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n.20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice. In this regard, the broad scope of this immunity was clearly articulated by this Court in the following terms:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011).

Since these judges are immune from any form of civil liability, it follows that the counties cannot be held vicariously liable for judicial acts by judges, acts which cannot give rise to direct civil liability for these judicial actors.

Furthermore, Rose errs when he suggest that the actions of these judges are somehow legally attributable to the counties. These state court agencies, which include the courts and the various county common pleas court domestic relations agencies, are defined by statute as arms of the state courts, and are institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics

Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, individual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system.

Given this merits analysis, which reveals that Rose's complaint remains profoundly flawed, the plaintiff's motion to amend his complaint (Doc. 13), should be denied. "The decision of whether to permit a supplemental pleading is within this Court's discretion. See Owens–Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188–89 (3d Cir.1979); see also Burns v. Exxon Corp., 158 F.3d 336, 344 (5th Cir.1998) (holding that district court did not abuse its discretion in denying leave to file supplemental complaint.)" Hassoun v. Cimmino 126 F.Supp.2d 353, 360 -361 (D.N.J.2000). Therefore, decisions regarding motions to amend or supplement pleadings rest in the sound discretion of the district court and will not be disturbed absent a abuse of that discretion. See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001).

That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure. In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v.

Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.' In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

Here, we have found that Rose's amended complaint fails to state a claim upon which relief may be granted. Therefore, granting leave to amend this complaint would be a futile act, since the amended complaint fails as a matter of law. In this setting, a

motion for leave to amend should be denied. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

Finally, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Since Rose's latest *pro se* complaint still does not comply with these pleading rules, and does not contain sufficient factual recitals to state a claim upon which relief may be granted, these allegations should be dismissed under 28 U.S.C. § 1915A, and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Moreover, in this case, the Court has previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. This amended complaint fails to state a viable civil rights cause of action, and actually repeat assertions that were previously found to be legally insufficient. Since the plaintiff has been afforded ample opportunity to correct the deficiencies identified in his prior complaint, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is

recommended that both this amended complaint be dismissed without further leave to amend.

### III. <u>**Recommendation**</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint should be dismissed with prejudice, and his motion for leave to amend (Doc. 13) should be denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of September 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge